IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CARRIE M.,                              )
                                        )
            Plaintiff,                  )
                                        )
       v.                               )   1:23CV12
                                        )
MARTIN J. O'MALLEY,[1]                  )
Commissioner of Social Security,        )
                                        )
            Defendant.                  )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Carrie M. ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on May 30, 2019, alleging a disability onset date of January 25, 2019 in both applications. (Tr. at 29, 408-21.)[2] Her

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #11].

applications were denied initially (Tr. at 148-85, 226-30) and upon reconsideration (Tr. at 186-225, 247-56, 264-71). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 273-74.) On June 15, 2022, Plaintiff, along with her attorney, attended the subsequent telephonic hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 29.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 51-52), and, on November 3, 2022, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-7).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.  DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 32.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> lumbar radiculopathy with mild disc bulge at L3-4 and central disc extrusion at L4-5; history of mild bilateral carpal tunnel syndrome and left greater than right ulnar neuropathy status post bilateral releases in 2016 with recent left median neuropathy at the wrist; obesity; headaches; anxiety/mood disorder; cognitive communication deficits (20 CFR 404.1520(c) and 416.920(c)).

(Tr. at 32-33.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 35.) Therefore, the ALJ assessed the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [she] can occasionally stoop;

5

> occasionally climb ladders, ropes, scaffolds, ramps, and stairs; frequently balance, crouch, kneel, and crawl; frequently handle and finger objects with the non-dominant left hand; avoid concentrated, meaning more than occasional, exposure to unprotected heights; can understand, remember and carry out simple instructions; can sustain concentration, attention, and pace sufficient to carry out those simple instructions over the course of an 8-hour workday and at 2-hour intervals; and can have occasional interaction with the public and coworkers.

(Tr. at 37.) At step four of the analysis, the ALJ determined, based on the testimony of the vocational expert, that Plaintiff's past relevant work as a computer operator exceeded the above RFC. (Tr. at 50.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled under the Act. (Tr. at 50-52.)

Plaintiff now contends that the ALJ erred when formulating the RFC assessment. Specifically, Plaintiff argues that, "[i]n rejecting the postural limitations opined by the state agency medical consultants, the ALJ substituted her own lay opinion in place of qualified medical experts." (Pl.'s Br. [Doc. #16] at 11.) Plaintiff also raises three, related challenges to the ALJ's mental RFC assessment. She contends that the mental RFC (1) "failed to capture Plaintiff's limitations in concentration, persistence, and pace despite finding moderate limitations in that functional area," (2) "failed to include a limitation to 1-3 step tasks or explain why no such limitation was warranted," and (3) failed "to adequately [provide] reasons for rejecting additional moderate limitations in the abilities to perform at a consistent pace and adequately respond to criticism and changes in the work setting." (Pl.'s Br. at 21.) After a thorough review of the record, the Court finds that none of these contentions merit remand.

6

A. Postural limitations

Plaintiff only raises a single narrow challenge to the ALJ's evaluation of her physical limitations. Specifically, Plaintiff challenges the ALJ's finding that Plaintiff could perform <u>frequent</u> balancing, crouching, kneeling, and crawling, despite the finding of both State agency medical consultants that Plaintiff could perform only <u>occasional</u> balancing, crouching, kneeling, and crawling. The ALJ found as follows when addressing the State agency opinions:

> The findings that the claimant is limited to occasional balancing, crouching, kneeling and crawling are not persuasive, as they are an overestimate of the claimant's limitations based on objective exam findings across the record, as well as the claimant's limited attendance at physical therapy that was recommended by her medical sources.

(Tr. at 45.) Plaintiff argues that the ALJ improperly substituted her lay opinion for the uncontroverted medical opinion evidence. (Pl.'s Br. at 10-11) (citing <u>Cynthia C. v. Comm'r of Soc. Sec. Admin.</u>, No. SAG-20-2710, 2021 WL 4342035 (D. Md. Sept. 22, 2021) (remanding where the ALJ reviewed the same records as the state agency consultants, but in light of those records found different limitations) and <u>Arakas v. Comm'r, Soc. Sec. Admin.</u>, 983 F.3d 83, 108 (4th Cir. 2020) ("[T]he ALJ improperly substituted his own opinion for Dr. Harper's. An ALJ may not substitute his own lay opinion for a medical expert's when evaluating the significance of clinical findings.")).

However, any error in this respect is clearly harmless in the present case, because none of the jobs identified by the vocational expert at step five of the sequential analysis involve the contested abilities. In this regard, at step five of the sequential analysis, the ALJ adopted three occupations identified by the vocational expert as representative jobs that Plaintiff could perform:

7

(1) Marker, DOT 209.587-034, 1991 WL 671802;

(2) Order Caller, DOT 209.667-014, 1991 WL 671807;

(3) Router, DOT 222.587-038, 1991 WL 672123.

The Dictionary of Occupational Titles ("DOT") reflects that balancing, crouching, kneeling, and crawling are all activities that are "not present" in these step-five occupations relied on by the ALJ. Therefore, even if the state agency consultants' limitation were adopted and these activities were limited to only "occasional," all of the occupations identified at step five of the sequential analysis could still be performed.

As noted by Defendant, where the alleged error is immaterial to the ultimate finding of no disability, remand is inappropriate. See Smith v. Colvin, No. 1:14CV00861, 2016 WL 375073, at *7 (M.D.N.C. Jan. 29, 2016) ("Any such error remains harmless under the circumstances of this case" because "the Dictionary of Occupational Titles ("DOT") reflects that Plaintiff's prior job does not require any crouching, . . . and the marker in retail job, as described by the DOT, does not require any crouching," and thus "even preclusion of all crouching would not materially impact the outcome in this case, [so] no reason exists for a remand based on the ALJ's finding that Plaintiff could occasionally crouch."); Cameron v. Colvin, No. 1:12CV1352, 2015 WL 631172, at *5 (M.D.N.C. Feb. 12, 2015) ("Even if the Court found substantial evidence failed to support the ALJ's finding regarding crawling and kneeling, only harmless error would result. The ALJ found that Plaintiff retained the RFC to perform her [prior work] and none of these jobs require any crawling or kneeling, . . . [and] the ALJ made an alternative step five finding that other jobs existed that Plaintiff could perform, and none of those jobs require crawling or kneeling," based on the DOT listings);

8

Randolph v. Astrue, No. 1:08CV839, 2011 WL 3841960, at *4 (M.D.N.C. Aug. 26, 2011) ("[A]t least two of the jobs identified by the VE that could be performed by a person of the same age, educational background and work experience as Plaintiff, with the RFC as expressed by the ALJ, require no stooping or crouching. . . . Accordingly, even if the ALJ had limited Plaintiff to jobs with no bending, stooping or crouching, he still would have been found, based on the testimony of the VE, to be not disabled."); Murphy v. Berryhill, No. 1:17CV1099, 2019 WL 587910, at *8 n.6 (M.D.N.C. Feb. 13, 2019) ("[N]one of the jobs identified by the vocational expert at step five of the analysis involve stooping, even occasionally, indicating that any error on this point is harmless.").

In short, because the limitations Plaintiff challenges in the present case have no possible bearing on the outcome of her claims, the Court finds no basis for remand.[5]

B. Mental RFC

Plaintiff next raises several challenges to the ALJ's mental RFC assessment. First, as set out in Plaintiff's brief and recounted above, she argues that the ALJ failed to account for her moderate limitations in concentration, persistence, and pace in the RFC assessment in accordance with Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). At step three of the sequential analysis, the ALJ in the present case determined that Plaintiff has moderate limitations in concentration, persistence, and pace. In Mascio, the Fourth Circuit explained that, where moderate limitations in concentration, persistence and pace are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations

---

[5] Defendant alternatively contends that the ALJ's determination was supported by substantial evidence, based on the largely normal or mild examination filings summarized in the decision (Tr. at 39-40) and Plaintiff's limited physical therapy participation (Tr. at 41). However, the Court need not address this issue further, as any error is harmless in any event as set out above.

do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted). As previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision. . . .
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a Plaintiff's moderate limitations in concentration, persistence, or pace in light

10

of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)); see also Sizemore v. Berryhill, 878 F.3d 72, 80–81 (4th Cir. 2017) (rejecting the plaintiff's argument under Mascio where the ALJ relied on the opinion of the state agency psychologist that, notwithstanding moderate limitations in concentration, persistence, and pace, the plaintiff could sustain attention sufficiently to perform simple, routine, repetitive tasks with additional limitations); Shinaberry v. Saul, 952 F.3d 113, 121-22 (4th Cir. 2020) (same, and noting that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC").

Here, as in Mascio, the ALJ found moderate limitations in concentration, persistence, or pace at step three of the sequential analysis. (Tr. at 36.) Later in the sequential analysis, the ALJ found Plaintiff capable of understanding, remembering, and carrying out simple instructions, as well as sustaining concentration, attention, and pace "sufficient to carry out those simple instructions over the course of an 8-hour workday and at 2-hour intervals." (Tr. at 37.) Plaintiff now argues that the ALJ erred by failing to include additional concentration, persistence, and pace-related limitations, or, in the alterative, explain why she omitted these limitations from the RFC assessment.

Plaintiff first contends that the ALJ "failed to explain how someone with moderate limitations in concentration, persistence, or pace would be able to be on task for two-hour segments of time during an eight-hour workday." (Pl.'s Br. at 17.)[6] However, the ALJ in this

---

[6] The Court notes that a "[m]oderately [l]imited" finding means that Plaintiff's ability is "impaired," Program Operations Manual System ('POMS'), § DI 24510.063, but not that she entirely lacked that capacity. In contrast, "markedly limited" means that the individual "cannot usefully perform or sustain the activity," POMS § DI 24510.063.

11

Case 1:23-cv-00012-JEP   Document 20   Filed 09/23/24   Page 11 of 20

case included an extended discussion and analysis of the evidence and potential limitations related to Plaintiff's mental impairments. In undertaking an initial analysis of Plaintiff's impairments, the ALJ noted Plaintiff's alleged frontal lobe and executive processing deficits, and noted that this alleged impairment was not supported by brain imaging, and further that Plaintiff's neuropsychology testing in June 2019 reflected abnormal validity scores, but the ALJ nevertheless concluded that "[t]o the extent this is a medically determinable impairment, [the decision] accounted for it by finding cognitive communication deficits to be a severe impairment and limiting [Plaintiff] to understanding, remembering and carrying out simple instructions due to her reported word finding difficulties that have not been consistently demonstrated across the record." (Tr. at 34.) Further, in assessing the functional areas, with respect to concentration, persistence, and pace, the ALJ explained that Plaintiff:

> testified to having problems with attention and focus. On examination, she has been noted to have some slow processing but was able to perform simple calculations. She has also had normal concentration, normal attention span, and been alert and oriented. Therefore, [Plaintiff] has a moderate limitation in this area.

(Tr. a 36) (internal citations omitted). The ALJ thus explained the specific basis on which she found moderate limitations in concentration, persistence, and pace. As recounted in the ALJ's decision, Plaintiff testified that "she may only remember the last thing told or asked of her, that she has problems with attention and focus, and that she does not feel she would be able to focus on a given task for 1 hour straight." (Tr. at 38.) However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. at 38.) Notably, Plaintiff does not contest this finding. Later in her discussion

Case 1:23-cv-00012-JEP   Document 20   Filed 09/23/24   Page 12 of 20

of the RFC, the ALJ explained that, "[a]s for [Plaintiff's] anxiety/mood disorder and cognitive communication deficits, [Plaintiff] has had inconsistent presentation and objective findings across the record." (Tr. at 44.) Nevertheless, the ALJ chose to "err on the side of caution" by finding a severe mental impairment and including related limitations in the RFC. (Tr. at 44.) With respect to these inconsistencies, the ALJ detailed the evidence that:

- Plaintiff underwent neuropsychological testing in June 2019 that "showed inconsistent scores and concerns about performance validity." (Tr. at 44, 637.) Specifically, the results of the June 2019 testing "were notable for inconsistent scores across multiple measures, suggesting results may not be fully reliable and valid" reflecting "poor effort/engagement in testing," which does "not necessarily imply that she intentionally suppressed or manipulated her performance" but raised concerns regarding the validity of the testing. (Tr. at 625, 637.) Despite the concerns regarding validity, the neuropsychological testing reflected that Plaintiff "exhibited relatively normal performance on some tasks of learning, verbal reasoning, and visual construction," so on other parts of the test with low scores it was "difficult to determine if the low scores are due to genuine impairment or lack of test engagement." (Tr. at 637.)

- At an examination and assessment in July 2019, Plaintiff's Montreal Cognitive Assessment score reflected only "mild neurocognitive impairment" and on exam she "had intact remote memory and appropriate fund of knowledge." (Tr. at 44, 628, 629.)

- Examination in September 2019 reflected "linear thought process, good concentration, normal attention, good fund of knowledge, and normal mood and affect." (Tr. at 44, 653.)

- At her February 2020 consultative examination, she "had a normal mood, normal memory, and normal concentration." (Tr. at 44, 758.)

- A May 2021 speech-language pathologist evaluation noted "cognitive communication deficits 'characterized by word findings difficulties'", but the pathologist noted that the scores were impacted by Plaintiff's anxiety because Plaintiff failed to respond to questions. (Tr. at 44-45, 944-45.) That evaluation also noted that Plaintiff's receptive language was "within normal limits" and Plaintiff "participated in conversation and answered complex clinician questions," and similarly Plaintiff's expressive language was "within normal limits" and Plaintiff "participated in conversation and independently provided detailed personal and medical history." (Tr. at 944.) Similarly, "[a]t a follow-up

13

> speech-language pathologist evaluation in March 2002, formal cognitive testing was not completed due to [Plaintiff] appearing upset" although "her speech articulation and intelligibility was 100%." (Tr. at 45, 1111-13.)

Having reviewed this evidence in the record, the ALJ concluded that:

> Overall, the mental assessments and objective findings reflect inconsistent findings when the claimant has presented to different medical sources. The evidence supports that the claimant has some limitations due to her mental impairments. Although she has had often mild or inconsistent findings on examination, the evidence supports she can understand, remember and carry out simple instructions; can sustain concentration, attention, and pace sufficient to carry out those simple instructions over the course of an 8-hour workday and at 2-hour intervals; and can have occasional interaction with the public and coworkers.

(Tr. at 45.) Thus, in terms of concentration, the ALJ noted both at step three and when assessing the mental RFC that Plaintiff's attention and concentration upon examination was largely normal. (Tr. at 36, 44-45, 46-47.) The ALJ also noted the July 2019 neuropsychological examination and Plaintiff's inconsistent performance, raising validity issues and concerns. (Tr. at 44, 46-47.) With respect to the opinion evidence, the ALJ acknowledged the May 2021 evaluation by the speech-language pathologist, at which the pathologist assessed Plaintiff "as having cognitive communication deficits 'characterized by work finding[] difficulties' with deficits in memory and attention," but the ALJ ultimately found the pathologist's opinions regarding Plaintiff's memory and concentration "only partially persuasive" (Tr. at 44, 49), and, as with the credibility finding, Plaintiff does not challenge this determination. In light of these findings, the ALJ's determination that Plaintiff could "sustain concentration, attention, and pace sufficient to carry out . . . simple instructions over the course of an 8-hour day and at 2-hour intervals" is both supported by substantial evidence and explained by the ALJ in a manner than permits judicial review.

Plaintiff's additional, related argument fails for similar reasons. Specifically, Plaintiff argues that the ALJ improperly omitted, without explanation, limitations opined by the State agency psychologists. (Pl.'s Br. at 17, 18.) Under the applicable regulations for claims filed on or after March 27, 2017,

> [The ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. . . .
>
> (1) <u>Supportability.</u> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) <u>Consistency.</u> The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.
>
> (3) <u>Relationship with the claimant</u> . . . [which includes]: (i) Length of the treatment relationship. . . (ii) Frequency of examinations. . . . (iii) Purpose of the treatment relationship. . . . (iv) Extent of the treatment relationship. . . [and] (v) Examining relationship. . . .
>
> (4) <u>Specialization</u>. The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.
>
> (5) <u>Other factors</u>. . . . This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. . . .

15

20 C.F.R. § 404.1520c(a) and (c). The regulations also require decision-makers to "articulate in . . . [their] decisions how persuasive [they] find all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Although all of the factors listed in paragraphs (c)(1) through (c)(5) of § 404.1520c should be considered in making this determination, the regulations specifically provide that the most important factors when evaluating the persuasiveness of an opinion are the first two: supportability and consistency. 20 C.F.R. § 404.1520c(a), 404.1520c(c)(1)-(c)(2).

Accordingly, the question in the present case is whether the ALJ adequately addressed whether each of the opinions at issue was (1) supported by the source's own records and (2) consistent with the other evidence in the record. See 20 C.F.R. § 404.1520c(b)(2); 404.1520c(c)(1)-(2). Notably, "the relevant regulations do not require 'particular language' or adherence to any 'particular format' in a decision, so long as the ALJ reasonably articulates her decision so that a reviewing court can 'trace the path of the adjudicator's reasoning.'" Boyd v. Kijakazi, No. 2:21CV29, 2022 WL 949904, at *2 (E.D. Va. Mar. 29, 2022) (citing Todd A. v. Kijakazi, No. 3:20cv594, 2021 WL 5348668, at *5 (E.D. Va. Nov. 16, 2021) (quoting Woodson v. Berryhill, No. 3:17cv347, 2018 WL 4659449, at *6 (E.D. Va. Aug. 7, 2018), and 82 Fed. Reg. 5844-01 at 5858)). Nevertheless, "whatever format the ALJ *does* choose must allow a reviewing court to discern an 'accurate and logical bridge' from the record evidence to the ALJ's conclusion." Boyd, 2022 WL 949904, at *3 (citing Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal citation omitted)). In particular, the ALJ must connect her discussion of the record evidence with her findings as to whether a specific source's opinions were consistent with and supported by that evidence.

Here, Plaintiff argues that Dr. Sean Sayers, the State agency psychologist on reconsideration, not only posited that Plaintiff could perform simple tasks in 2-hour intervals as set out above, but further limited Plaintiff to performing such tasks "at a non-production pace." (Tr. at 220.) However, the ALJ directly addressed her omission of this limitation, noting that the opinion that Plaintiff was moderately limited in "performing at a consistent pace" was not persuasive, as it was "not well supported by the overall record." (Tr. at 46.) In support of this determination, the ALJ cited Plaintiff's history of neurocognitive and mood impairments which, throughout multiple examinations, were, at most, mildly limiting. (Tr. at 46.) The ALJ again noted Plaintiff's July 2019 neuropsychological evaluation with inconsistent scores across different measures of performance validity. (Tr. at 46.) The ALJ also cited Plaintiff's activities, including the ability to care for her children as a single parent, shop, drive, pay bills, and prepare meals. (Tr. at 46.) Thus, the ALJ specifically addressed the decision not to include a production pace limitation, and pointed to substantial evidence in the record to support that determination.[7]

In addition, Plaintiff also notes that Dr. Sayers found that Plaintiff "is able to understand, remember, and carry out simple 1-3 step instructions, but may have difficulty with detailed instructions when feeling stressed or pressured." (Tr. at 220.) Plaintiff argues that the ALJ should have limited Plaintiff to "simple 1-3 step instructions," as opined by Dr. Sayers,

---

[7] Moreover, as with Plaintiff's challenge in subsection A of this Order, none of the jobs identified by the vocational expert at step five of the sequential analysis suggest any production requirements, set time constraints, conveyor belt work, or other tasks that potentially could be construed as "production pace" work. See, e.g., Spurlock v. Berryhill, No. 1:17CV411, 2018 WL 791302, at *7 (M.D.N.C. Feb. 8, 2018) (finding no conflict between the position of Marker and a limitation to no high production demands). Accordingly, even if the ALJ erred by omitting such a restriction from the RFC, any error proves immaterial to the ultimate finding of disability.

rather than "simple instructions" as set out in the RFC assessment. (Pl.'s Br. at 18.) Plaintiff's initial argument on this point is not clear. However, in her Reply Brief, Plaintiff clarifies that she challenges the ALJ's failure to reconcile Dr. Sayer's findings regarding understanding and memory with the findings of Margaret Barham, Ph.D., the State agency medical consultant at the initial level. (Pl.'s Reply Br. [Doc. #18] at 2-3.) When asked to "[e]xplain in narrative form the presence and degree of specific understanding and memory capacities and/or limitations," Dr. Barham stated that Plaintiff "[a]ppears capable of understanding and remembering routine work procedures." (Tr. at 180.) At reconsideration, Dr. Sayers opined that Plaintiff "is able to understand, remember, and carry out simple 1-3 step instructions, but may have difficulty with detailed instructions when feeling stressed or pressured." (Tr. at 201.) When considering these opinions, the ALJ correctly noted that both consultants found Plaintiff moderately limited in understanding, remembering, and carrying out detailed instructions. (Tr. at 46.) In finding these opinions "partially persuasive," the ALJ further noted that the consultants' findings were only "somewhat consistent with the overall record." (Tr. at 46.) The ALJ went on to explain that she limited Plaintiff "to simple instructions and occasional interaction with the public/coworkers, despite the inconsistent findings across the record with regard to her mental impairments and communication issues." (Tr. at 46.) She then detailed these "inconsistent findings," which included the test findings of dubious reliability and largely normal memory and concentration findings upon examination, as set out above. (Tr. at 44, 46.) This analysis is sufficient to allow the Court to follow the ALJ's reasoning. Thus, the ALJ sufficiently met her obligation to either (1) include an opined limitation in the RFC assessment or (2) provide an explanation for its omission. See Woods, 888 F.3d at 694.

Plaintiff's final argument regarding her mental RFC largely repeats her previous contentions. Plaintiff argues that the ALJ failed "to adequately [provide] reasons for rejecting additional moderate limitations in the abilities to perform at a consistent pace and adequately respond to criticism and changes in the work setting." (Pl.'s Br. at 21.) As noted above with regard to "non-production pace," the ALJ specifically found that "[t]he consultants' opinion of moderate limitations in the following areas [were] not persuasive: performing at a consistent pace, responding appropriately to criticism from supervisors, and responding appropriately to changes in the work setting, as they are not well supported by the overall record." (Tr. at 46.) In support of this determination, the ALJ cited (1) Plaintiff's history of neurocognitive and mood impairments which, throughout multiple examinations, were, at most, mildly limiting, (2) Plaintiff's inconsistent performance on mental testing resulting in invalid results, (3) Plaintiff's extensive activities, including the ability to care for her children as a single parent, shop, drive, pay bills, and prepare meals, and (4) her largely normal interactions with healthcare providers. (Tr. at 46.) In light of these findings, the Court finds that it can "adequately trace the path" of the ALJ's reasoning regarding the consistency and supportability of the consultants' opinions, including the bases for omitting certain opined limitations from the Plaintiff's mental RFC.[8]

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Amended Dispositive Brief [Doc. #16] is DENIED,

---

[8] The Court notes that the ALJ's determination only covers the period to June 27, 2022, the date of the ALJ's decision. If Plaintiff's condition has worsened, or if she has new evidence or testing covering the period after June 27, 2022, she can, of course, file a new claim and present that information to the Agency for further consideration. However, there is not a sufficient basis to vacate and remand the ALJ's decision for the period up to June 27, 2022, for the reasons set out above.

that Defendant's Dispositive Brief [Doc. #17] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 23rd day of September, 2024.

/s/ Joi Elizabeth Peake
Joi Elizabeth Peake
United States Magistrate Judge